UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF MISSISSIPPI
                         JACKSON DIVISION


FIRST TRINITY CAPITAL CORPORATION                          PLAINTIFF


VS.                                CIVIL ACTION NO. 3:13CV9TSL-JMR

CATLIN SPECIALTY INSURANCE AND
CRUMP INSURANCE SERVICES, INC.                             DEFENDANTS


                   MEMORANDUM OPINION AND ORDER

     This cause is before the court on the motion of defendant

Crump Insurance Services, Inc. (Crump) for summary judgment

pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Plaintiff First Trinity Capital Corporation (First Trinity) has

responded to the motion and the court, having considered the

memoranda of authorities, together with attachments, submitted by

the parties, concludes that the motion is well taken and should be

granted.[1]

     Plaintiff First Trinity is engaged in the business of

financing insurance premiums.  In a premium finance arrangement,

the premium finance company advances an amount to an insurer or

insurance agent or broker in payment of premiums on an insurance

contract which the insured under such policy must repay in regular

monthly installments.  See Miss. Code Ann. § 81-21-1 (defining

premium finance agreement as "an agreement by which an insured or

---

     [1]   The docket in this case reflects a motion for summary
judgment by First Trinity as to Crump's counterclaim against it.
The court is advised that Crump does not oppose the motion.

prospective insured promises to pay to a premium finance company the amount advanced or to be advanced to an insurer or to an insurance agent or broker in payment of premiums of an insurance contract together with interest or discount and a service charge....").  In First Trinity's standard finance agreement, the insured grants First Trinity a security interest in any unearned premiums and further grants First Trinity the power to cancel the policy if the insured defaults on its monthly payments.  Thus, in the event an insured defaults on its repayment obligation, First Trinity may cancel the policy and collect the unearned premiums.

This case involves a premium finance agreement alleged to have been entered between First Trinity and B&W Auto Sales (B&W) to finance B&W's premium for a garage policy allegedly obtained by B&W from Catlin Specialty Insurance (Catlin), through Catlin's alleged general agent Crump, with effective dates of March 19, 2009 to March 19, 2010.  First Trinity alleges that it provided premium financing for this policy by payment of $17,850 to Central Mississippi Insurance (CMI), which acted as the authorized agent for Catlin and Crump.  First Trinity asserts that under the terms of the premium finance agreement executed by B&W, B&W agreed to repay the monies advanced, with interest and finance charges, in amortized monthly installments; assigned to First Trinity all unearned premiums as collateral for the loan to B&W; and gave

2

First Trinity power of attorney to cancel the policy in the event of a default by B&W.

The complaint alleges that B&W defaulted on its repayment obligations under the premium finance agreement, whereupon First Trinity exercised its right to cancel the policy by sending a Notice of Cancellation to B&W, and to Catlin and Crump, directing that the policy be cancelled effective August 7, 2009. First Trinity alleges that upon cancellation, Catlin and Crump were obligated by law to return unearned premiums totaling $13,077.59 and yet they have failed and refused to refund the unearned premium to First Trinity.

On the basis of these allegations, First Trinity brought this action purporting to assert causes of action against Catlin and Crump for breach of statutory law and negligence *per se* (Count Oneo); breach of contract (Count Two); negligence (Count Three); fraud (Count Four); constructive trust (Count Five); actual and apparent authority (Count Six); ratification and estoppel (Count Seven); and punitive damages (Count Eight).[2] It has since voluntarily dismissed Catlin, leaving Crump as the only defendant. Crump has now moved for summary judgment as to each of plaintiff's putative causes of action.

---

[2]     The case was originally filed in state court but was removed on the basis of diversity jurisdiction. Following removal, plaintiff sought and was granted leave to file an amended complaint adding the count for ratification and estoppel.

In its motion, Crump explains what plaintiff's complaint does not:  that Jan Gunn, who owned and operated CMI, was engaged in a scheme to defraud First Trinity, and that in this, and numerous other transactions involving at least eight other putative insurers and eight alleged general agents, premium finance monies forwarded to CMI/Gunn by First Trinity were not paid over to the putative insurers but rather were misappropriated by Gunn.  Gunn has acknowledged that she misappropriated $1,293,450 from First Trinity through "fraudulent loans and financial transactions."  According to Crump, the $13,077.59 in damages sought by First Trinity in this litigation relates to a "fraudulent premium financing arrangement for a purported insured, B&W, for a fictitious policy allegedly (but not actually) issued by the named co-defendant/insurer, Catlin, allegedly through this defendant/ general agent, Crump."

Crump argues that plaintiff's claims for breach of statutory law, negligence *per se* and breach of contract must be dismissed because plaintiff has not and cannot establish the existence of either the alleged Catlin insurance policy and/or the purported premium finance agreement.  It argues that the remaining claims must be dismissed for lack of proof that CMI/Gunn was Crump's agent.

First Trinity alleges in support of its claim for breach of statutory law and negligence *per se* that it acquired, held and

4

perfected a security interest in all unearned premiums in

connection with the B&W policy when it funded the premiums for the

policy, and that upon its cancellation of the policy, Crump

violated its statutory duty to refund all unearned premiums.

Although First Trinity has not identified the statute upon which

these claims are based, it would appear they are premised on

Mississippi Code Annotated § 81-21-21, which states:

> Whenever a financed insurance contract is cancelled, the
> insurer shall return to the premium finance company as
> soon as reasonably possible whatever gross unearned
> premiums are due under the insurance contract, and also
> shall furnish to the premium finance company a report
> setting forth an itemization of the unearned premiums
> under the policy that includes a detailed mathematical
> summary of the computation of the return premium.

Miss. Code Ann. § 81-21-21.  In its motion, Crump argues that

First Trinity's claims for breach of statutory law and negligence

*per se* must be dismissed in the absence of evidence that an

insurance contract actually existed; and it maintains that First

Trinity has no such evidence.

Indeed, in the absence of an insurance contract, there could

be no unearned premiums; and in the absence of an insurance

contract, there can be no violation of § 81-21-21, which by its

terms applies only "[w]henever a financed insurance contract is

cancelled."  See Insurasource, Inc. v. Phoenix Ins. Co., 912 F.

Supp. 2d 433, 439-440 (S.D. Miss. 2012) (nonexistence of policy

precluded finding that premium finance company was entitled to any

5

unearned premiums or interest under New Jersey statute providing
for return of unearned premiums "[w]henever an insurance policy or
contract is canceled"). Plaintiff argues in response to the
motion that it has presented sufficient evidence of the B&W
insurance policy to create a genuine issue of material fact as to
its existence. However, the court is not persuaded.

In support of its contention that a jury issue is presented
as to whether a policy was actually issued, First Trinity relies
on evidence which it contends establishes the following facts:
that B&W was a legitimate trucking company with which CMI/Gunn had
done business for years; that Gunn signed the Agent Certification
in the premium finance agreement certifying "that all policies
listed above have been issued and delivered..."; that after making
the decision to finance the policy, First Trinity sent Crump a
Notice of Premium Finance and yet Crump never contacted First
Trinity to inform it that Crump had not issued the policy; and
that First Trinity would not have financed the policy without
first communicating with Crump and confirming the information
provided by CMI/Gunn regarding the existence and issuance of the
policy.

None of this evidence cited by First Trinity, either alone or
in combination, tends to establish that a policy was in fact
issued. The fact that B&W was a legitimate company certainly does
not. The fact that Gunn certified that a policy was issued is

obviously insufficient to prove that a policy was issued. Moreover, even assuming that First Trinity notified Crump of the premium finance agreement for the purported B&W policy, Crump's failure to inform First Trinity that no such policy existed does not establish that a policy was issued.  The only other evidence adduced by First Trinity is an affidavit from Clarence Zahn, who worked for First Trinity, in which he states that it was First Trinity's regular practice to communicate with the general agent identified in the premium finance agreement to verify the information provided by CMI/Gunn in deciding whether to finance the subject policy, and that at some unspecified time, he had a phone conversation with a representative of Crump who provided him with a policy number for the B&W policy, which he handwrote on the Notice of Cancellation.[3]  However, as Crump notes, even assuming that an unidentified Crump representative provided information to Zahn or First Trinity, that does not prove that a policy, in fact, existed.  There is no evidence from Catlin, B&W or Crump confirming the existence of a policy.  First Trinity has produced no policy, no application for a policy and no evidence of underwriting for a policy.  In short, there is no proof that a

---

[3]     With its response, First Trinity submitted an unsigned affidavit from Zahn, representing that Zahn was unavailable at that time and that it would move to substitute a signed affidavit once Zahn became available.  First Trinity has since moved to substitute Zahn's signed affidavit for the earlier unsigned one. Although Crump opposes the motion to substitute, the court will grant the motion.

policy was issued by Catlin to B&W.  The court thus concludes that Crump is entitled to summary judgment on First Trinity's claims for relief based on the alleged statutory violation and negligence *per se.*

As the basis for its claim for breach of contract, First Trinity alleges that "[w]hen it financed B&W's premiums for the Policy, First Trinity stepped into the shoes of B&W for all payments and set-offs while leaving the insurer-relationship between Catlin and B&W intact[;]" that it "acquired, held and perfected a security interest in all unearned premiums in connection with the Policy when it funded the policy[;]" and that upon cancellation of the policy, Catlin and Crump breached their contractual duty to return all unearned premiums in connection with the policy.  This claim depends on the existence of an underlying insurance policy, as well as on a valid premium finance agreement.  See Phoenix Ins. Co., 912 F. Supp. 2d at 440 (observing that identical claim "requires the existence of a valid insurance policy, providing [insured] with the right to unearned premiums upon policy cancellation, and a valid agreement between [premium finance company] and [insured], allowing [finance company] to recover any unearned premiums in place of [insured]").  The court has concluded that plaintiff has failed to present sufficient proof to create an issue for trial on whether a policy

8

existed, and therefore, summary judgment is also proper as to this count.[4]

Crump seeks summary judgment as to all of First Trinity's remaining claims – for negligence, fraud, constructive trust, actual and apparent authority, estoppel and ratification, and punitive damages – for lack of proof that Gunn was acting as Crump's agent and/or had actual, implied or apparent authority to act on Crump's behalf in relation to the events at issue in this litigation.  Crump notes that all of these claims are based on First Trinity's allegations that CMI/Gunn was at all relevant times Crump's authorized agent; that CMI/Gunn was Crump's authorized agent so that payment to CMI/Gunn of the $17,850 to finance the premium for the purported Catlin policy constituted payment to Crump; and that Crump is liable for any fraud perpetrated by CMI/Gunn.  However, Crump maintains that there is no record evidence to support the allegation that Gunn acted as Crump's agent, or that she had actual, implied or apparent authority in connection with the subject transaction.[5]

---

[4]     Crump further submits that First Trinity has failed to come forward with proof of a valid premium financing agreement. The court need not address this argument.

[5]     Crump argues in its rebuttal that these claims are also due to be dismissed because
there is nothing in the record to establish that Crump had any relationship whatsoever with the insurance company, Catlin, at times pertinent to this litigation. There is no agency agreement in the record between Catlin and Crump.  In the record, there are no

9

Insurasource, Inc. v. Cowles & Connell of NY, Inc., Civ.
Action No. 2:11-CV-76-KS-MTP, 2011 WL 4397487 (S.D. Miss. Sept.
21, 2011), aff'd, 467 Fed. Appx. 337, 338 (5th Cir. 2012), involved
a similar agency issue.  There, an independent insurance agent,
Rocco, obtained premium financing from the plaintiff,
InsuraSource, for multiple insurance policies placed with the
defendant general agent, Cowles & Connell.  In each of the premium
finance agreements presented by Rocco to InsuraSource, Cowles &
Connell was identified as the general agent for the purported
insurer.  InsuraSource forwarded the premium monies covered by the
agreements to Rocco for payment to Cowles & Connell on behalf of
the respective insurers.  However, Rocco never remitted premiums
for some of the alleged policies and instead misappropriated the
funds.  Indeed, the defendant asserted that some of the policies
for which financing was obtained were never actually issued.
Following default on a number of the premium finance agreements,
InsuraSource attempted to cancel those policies and collect

_____

       manifestations, by word or deed, by Catlin establishing
       that Crump had authority to negotiate, execute or
       perform on financing agreements for policies issued by
       Catlin.
As this argument was not raised in the motion for summary
judgment, it is not properly before the court and will not be
considered.  See Gillaspy v. Dall. Indep. Sch. Dist., 278 F. App'x
307, 315 (5th Cir. 2008) (stating that "[i]t is the practice of
... the district courts to refuse to consider arguments raised for
the first time in reply briefs") (citation omitted).

unearned premiums.  When the defendant Cowles & Connell failed to remit any of the unearned premiums, InsuraSource filed suit alleging that Rocco was at all relevant times the defendant's authorized agent, that payments made to Rocco constituted payments to the defendant, and that the defendant was liable for any fraud perpetrated by Rocco.

In the context of the defendant's motion to dismiss for lack of personal jurisdiction, the court concluded that Rocco was not the defendant's agent in connection with the subject transactions. The court first cited the following controlling principles of Mississippi agency law:

> An agency relationship may be express or de facto. A de facto agency may be proven by the presence of three elements at the time of contracting: (1) "manifestation by the alleged principal, either by words or conduct, that the alleged agent is employed as such by the principal," (2) "the agent's acceptance of the arrangement," and (3) "the parties understood that the principal will control the undertaking."
> ...
>
> Whether an agency relationship exists is "to be determined by the relations of the parties as they exist under their agreements or acts, with the question being ultimately one of intention.... If relations exist which will constitute an agency, it will be an agency whether the parties understood the exact nature of the relation or not. Moreover, the manner in which the parties designate the relationship is not controlling, and if an act done by one person in behalf of another is in its essential nature one of agency, the one is the agent of such other notwithstanding he is not so called.

Id. at *3 (citations omitted).  Applying these principles, the court reasoned that

11

the financing agreements themselves provide no evidence
that Rocco acted on Defendant's behalf.  The only
parties other than Plaintiff to sign the financing
agreements were Rocco and some of the primary insureds.
In some of the contracts, Rocco signed on behalf of the
primary insured as an "Authorized Signatory."  In
others, the primary insured signed the contract.  In
each of the contracts, Rocco signed as the "AGENT."
Each contract lists the insurance company writing the
policy and the general agent through whom the policy was
to be purchased.  Defendant is listed as the "general
agent" on each contract.  However, there is no
indication in the contracts themselves that either the
insurance company or the general agent were parties to
the negotiation, execution, or performance of the
financing agreements.

Id. at 4.  The court observed that there was a broker's agreement

between Rocco and the defendant, but found that there was nothing

therein that supported the plaintiff's agency allegation.  On the

contrary, the court found that the broker's agreement was clear

that while Rocco could submit applications for insurance to the

defendant, he was not authorized to accept premium payments on

behalf of the defendant.  Further, contrary to the plaintiff's

allegations, there was no evidence that the defendant had

represented to it that Rocco was acting as its agent with regard

to the financing agreements.  Id.  The court concluded:

> [T]he pertinent issues in determining agency are
> 1) whether Defendant manifested, by word or deed at the
> time the financing agreements were executed, that Rocco
> was its principal; 2) whether Rocco accepted this
> arrangement; and 3) whether the parties understood that
> Defendant was in control of Rocco throughout the
> undertaking.  Plaintiff has not presented any evidence
> to this effect.  Indeed, Plaintiff has not presented any
> evidence that Defendant had a role in the solicitation,

negotiation, execution, or performance of the financing
agreements.

Id. at *5.  See also id. (reiterating that "Plaintiff has not

presented any evidence that Rocco was Defendant's agent or that

Defendant had any role in the solicitation, negotiation,

execution, or performance of the financing agreements.

Furthermore, Plaintiff has not presented any evidence that

Defendant authorized or controlled Rocco's actions, or that Rocco

was otherwise acting on Defendant's behalf.")

First Trinity attempts to distinguish Cowles & Connell on the

basis that it was decided on a motion to dismiss for lack of

personal jurisdiction.  However, the agency principles applied

therein, and the court's substantive analysis of the agency issue,

are equally applicable here.[6]  As in Cowles & Connell, there is no

---

[6]     In contrast, Baker & Co., Florida v. Preferred Risk
Mutual Insurance Co., 569 F.2d 1347 (5th Cir. 1978), on which
First Trinity relies, is clearly distinguishable.  In Baker & Co.,
"the proof was replete with acts of Preferred Risk (the alleged
principal) which invested Carpenter (the alleged agent) with
agency credentials."  Id. at 1350 (parenthetical added).  For
example:
     Carpenter was Preferred Risk's agent with undisputed
     actual authority to operate an insurance agency in an
     office rented by Preferred Risk, utilizing a secretary
     employed in part by the company.  He was also actually
     authorized to solicit insurance business for Preferred
     Risk, to issue binders obligating the company to cover
     risks for periods up to 30 days, to notify lending
     institutions that such coverage existed, to perform
     services for customers, and to engage in premium
     financing.
Id.  There is no proof in the case at bar remotely approaching
that presented in Baker & Co.

13

proof that Crump had any involvement in the solicitation,

negotiation, execution, or performance of the financing agreement,

or that it "was in control of [CMI/Gunn] throughout the

undertaking."  The court thus concludes that First Trinity has

failed to create a genuine issue of material fact as to its

allegation that CMI/Gunn was Crump's agent.

First Trinity contends, in the alternative, that even if

CMI/Gunn lacked actual authority, it had apparent authority to act

on Crump's behalf.  In the court's opinion, however, the record

discloses no facts that would support this theory.

> "Apparent authority exists when a reasonably prudent
> person, having knowledge of the nature and usages of the
> business involved, would be justified in supposing,
> based on the character of the duties entrusted to the
> agent, that the agent has the power he is assumed to
> have."  Mladineo v. Schmidt, 52 So. 3d 1154, 1167 (Miss.
> 2010) (citation omitted).  The following three factors
> must be met to recover under the theory of apparent
> authority: "(1) acts or conduct on the part of the
> principal indicating the agent's authority, (2)
> reasonable reliance on those acts, and (3) a detrimental
> change in position as a result of such reliance."  Id.

Phoenix Ins. Co., 912 F. Supp. 2d at 443.  As evidence of "acts or

conduct on the part of the principal indicating the agent's

authority," First Trinity notes that "Crump itself routinely

identifies CMI as its 'agent' on its own documents," and that

"Crump placed numerous insurance policies through CMI every year

from 2004 to 2009."  In the court's opinion, however, the mere

fact that CMI/Gunn had previously placed policies through Crump

14

provides no indication as to the nature or extent of CMI/Gunn's authority.

First Trinity argues, in the further alternative, that Crump is estopped to deny that CMI acted as its agent since Crump never contacted First Trinity to inform it that CMI was not its agent after First Trinity sent Crump a Notice of Premium Finance after it made the decision to finance the B&W policy.  More precisely, it argues that "[a]t the inception of this transaction, First Trinity sent Crump a Notice of Financed Premium informing Crump *that it had paid CMI* on behalf of the insured the yearly premiums for Policy No. PDA0472673. ...  Crump took no action whatsoever to disavow to First Trinity that CMI was its agent after Crump received the Notice of Financed Premium from First Trinity.  Crump is now estopped to deny CMI's agency status."

The elements required to prove equitable estoppel are as follows:

> Conduct and acts, language or silence, amounting to a
> representation or concealment of material facts, with
> knowledge or imputed knowledge of such facts, with the
> intent that representation or silence, or concealment be
> relied upon, with the other party's ignorance of the
> true facts, and reliance to his damage upon the
> representation or silence.

Helveston v. Lum Props. Ltd., 2 So. 3d 783, 787 (Miss. Ct. App. 2009) (quoting Miss. Dep't of Pub. Safety v. Stringer, 748 So. 2d 662, 665 (Miss. 1999)).  The court in Phoenix Ins. Co., supra, held that "no rational jury could conclude that ISI (the premium

15

finance company) made premium payments to Rocco (the independent agent) in reasonable reliance on Phoenix's alleged silence" because it parted with the money on the day that the Notices were sent. 912 F. Supp. 2d at 443. The same is true here. First Trinity claims that it sent a Notice of Financed Premium *after it had already paid CMI.* Thus, it cannot prove detrimental reliance on Crump's alleged silence and thus cannot prove estoppel.

Based on all of the foregoing, the court concludes that Crump's motion for summary judgment well taken and it is therefore ordered that the motion is granted. It is further ordered that First Trinity's motion for summary judgment as to Crump's counterclaim is granted.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED this 2nd day of December, 2013.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE